**In The Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Edith H. HULL, Respondent.**

**No. 443, 2000.**

Supreme Court of Delaware.

Submitted: Nov. 14, 2000.

Decided: Feb. 27, 2001.

Charles Slanina, Tybout Redfearn & Pell, Wilmington, Delaware.

Michael S. McGinniss, Office of Disciplinary Counsel, Wilmington, Delaware.

Before: HOLLAND, BERGER, and STEELE, Justices.

PER CURIAM.

This case comes before the Court pursuant to Rule 9(e) of the Rules of the Board on Professional Responsibility. The Office of Disciplinary Counsel seeks review of a report issued by the Board. In the report, the Board found that the Respondent, Edith H. Hull, a member of the Delaware Bar, violated numerous rules of the Delaware Lawyers' Rules of Professional Conduct and recommended that Hull be suspended for a period of one year with the option of being reinstated after six months.

The Office of Disciplinary Counsel filed a timely objection to the Board's report and recommendation. The ODC contends that the Board erred by recommending that Hull be permitted to apply for reinstatement after six months. Additionally, the ODC asserts that a more appropriate sanction for Hull, given her numerous violations of the DLRPC, would be a two year suspension. In her response to the ODC's objections, Hull contends that the Board believed her actions were unintentional and that the Board's recommendation implied that the Board believed her treatment for her mental disability would be successful. Although the Board may well have accurately assessed the likelihood of success following Hull's treatment, we reject the Board's sanctions in this case. We find instead that a two-year suspension recommended by the ODC is a more appropriate sanction under the circumstances.

On October 21, 1999, the ODC filed a petition for discipline regarding Hull's representation of clients in four separate cases. An extension required Hull to respond on or before December 10, 1999.

Hull failed to respond by that time or to seek additional extensions. On March 24, 2000, the panel assigned to hear this matter by the Board granted the ODC's Motion for Charges to be Deemed Admitted Pursuant to Board Rule 9(d), and the evidence submitted at the hearing concerned only the sanctions to be imposed.

The first set of charges involves Hull's representation of James and Laura Aronson who retained Hull in March 1996 to file a Chapter 13 Bankruptcy Petition. The Aronsons soon separated and failed to comply with the payment schedule agreed upon in the Chapter 13 plan, at which point the Chapter 13 trustee filed a motion to dismiss the bankruptcy.

Because of their separation, the Aronsons became adverse parties. Hull failed to inform the Aronsons of any potential conflict of interest she may have had and continued to represent the parties. Mr. Aronson made several attempts to contact Hull. Telephone records indicate that she did not return his calls despite Hull's contention that she made several attempts to contact him.

Hull advised Ms. Aronson that she could obtain an extension, providing Hull with more time to contact Mr. Aronson and then file a motion to sever and convert to a Chapter 7 bankruptcy. Hull obtained the extension but failed to file the motion to convert the bankruptcy before the deadline. Therefore, the Court dismissed the Chapter 13 case. Hull then filed the motion to convert and the motion to sever several days after the dismissal.[1] In the motion to sever, Hull claimed that Mr. Aronson did not reply to her requests for information about who would represent him once the petition was severed. Finally, Hull failed to file either a motion to reconsider or a motion to reopen the Chapter 13 case.

---

1. The pleadings were not docketed because they were filed after the Court entered the order of dismissal.

The second set of charges involves Hull's representation of Lillian Rachael Smith. Smith sought Hull's advice concerning possible medical malpractice. After reviewing Smith's medical records, Hull advised Smith that she probably had a malpractice claim. Hull then stated that she would refer the case to a colleague in Wilmington. Hull failed to refer the case, took no action concerning the medical malpractice claim and did not return any of Smith's telephone calls. Nearly two years after initially discussing the claim with Hull, Smith went to Hull's office, retrieved her medical records and sought legal representation by another attorney, only to learn that she could not file because the statute of limitations now barred the malpractice claim.

The third set of charges involves Hull's representation of John and Candy Knapp. On the Knapps' behalf, Hull filed a Chapter 7 bankruptcy petition. The Knapps were eligible for an exemption related to the equity in their home. Hull did not timely file for this exemption, even after several parties, including the Knapps and the Chapter 7 trustee, expressed concern over the omission. Without consideration of the exemption, the bankruptcy trustee permitted the sale of the Knapps' home. Seven months after the sale, Hull requested that the Knapps sign amended schedules reflecting the exemption but did not file the amendment until four days after the Bankruptcy Court approved the final disposition of the Knapps' property.

The final set of charges allege that Hull failed to adequately represent Raymond Nack in his Chapter 13 bankruptcy proceedings. Hull initially filed a petition on behalf of Nack but did not file a Chapter 13 plan in a timely fashion. After the Chapter 13 trustee filed a motion to dismiss, Hull received notice that a response must be filed on or before June 12, 1998. Hull, however, failed to act. On June 16, 1998, the Bankruptcy Court ordered dismissal of the petition. On June 22, 1998, Hull learned that a motion to reopen the case had to be filed before June 26, 1998, but she did not move to reopen the case, nor did she file a motion for relief from judgment or order. Nack made several attempts to contact Hull, but she did not return his calls. Nack's secured creditors foreclosed on his home. Nearly two weeks after the sale of Nack's home, Hull filed a Motion for Relief from Judgment or Order. After converting the case to a Chapter 7 bankruptcy, the Chapter 7 trustee served a motion to examine Hull's fees. The Court ordered Hull to refund Nack's attorney's fees.

The Petition alleged that Hull (1) violated Rule 1.4(a) by failing to keep Mr. Aronson reasonably informed about the status of the matter or to promptly comply with his reasonable requests for information; (2) violated Rule 1.7(a) by filing a motion to sever and transfer on behalf of Ms. Aronson without the consent of Mr. Aronson, whom she jointly represented; (3) violated Rule 1.16(a) by failing to withdraw from the representation of the parties after a conflict arose; (4) violated Rule 2.2(c) by failing to withdraw as an intermediary for the Aronsons; (5) violated Rule 3.3(a)(1) by knowingly making a false statement of material fact to the Bankruptcy Court; (6) violated Rule 3.4(b) by falsifying evidence that she provided to the ODC in connection with its investigation of the Aronsons' complaint; (7) violated Rule 8.1(a) by knowingly providing false information to the ODC in response to the Aronsons' ODC complaint; and, (8) violated Rule 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in connection with her making a false representation of material fact to the Bankruptcy Court and by making false representations and producing falsified documents to the ODC.

The Petition alleged that Hull (1) violated Rule 1.2(a) by failing to abide by Smith's objectives for her representation or to consult with her about the means by which they would be pursued; (2) violated Rule 1.3 by failing to act with reasonable

diligence and promptness while representing Smith, and (3) violated Rule 1.4(a) by failing to keep Smith reasonably informed about the status of her legal matter or to comply promptly with her reasonable requests for information.

Additionally, the Petition alleged that Hull (1) violated Rule 1.1 by failing to provide the Knapps with competent representation; (2) violated Rule 1.2(a) by failing to abide by the Knapps' decisions concerning the objectives of their representation or to consult with the Knapps about the means by which they would be pursued; (3) violated Rule 1.3 by failing to act with reasonable diligence and promptness in representing the Knapps; (4) violated Rule 1.4(a) by failing to keep the Knapps reasonably informed about the status of their legal matter or to comply promptly with their reasonable requests for information; and (5) violated Rule 1.5(a) by charging the Knapps an unreasonable fee for her representation in their bankruptcy matters.

Finally, the Petition maintains that Hull (1) violated Rule 1.1 by failing to provide Nack with competent representation; (2) violated Rule 1.2(a) by failing to abide by Nack's decisions concerning the objectives of his representation or consult with Nack about the means by which they would be pursued; (3) violated Rule 1.3 by failing to act with reasonable diligence and promptness in representing Nack; (4) violated Rule 1.4(a) by failing to keep Nack reasonably informed about the status of his legal matter or to comply promptly with reasonable requests for information; and (5) violated Rule 1.5(a) by charging Nack an unreasonable fee for representation in his bankruptcy matters.

■ Because the violations were deemed admitted, the Board focused on Delaware's standards for imposing attorney sanctions. Those standards require the Board to consider (1) the nature of the duty violated; (2) the lawyer's mental state; (3) the actual/potential injury caused by the misconduct; and (4) the existence of any aggravating and mitigating circumstances.[2]

Hull violated a number of obligations to her clients, including an alarming pattern of failing to communicate with her clients, failing to consult her clients about litigation decisions, failing to keep her clients reasonably informed and failing to provide competent representation. Additionally, Hull charged unreasonable fees for her services and failed to disclose an obvious conflict of interest.

In assessing these violations, the Board considered the injuries these violations caused. The Board found that Hull's actions harmed Smith, the Knapps, and Nack. Because Hull failed to act promptly, Smith found her medical malpractice claim barred by the statute of limitations. The Board determined that Hull's actions prevented the Knapps from claiming a $8,000 personal exemption from bankruptcy to which they were entitled. The Board concluded that Hull's failure to meet the filing deadlines subjected Nack's house to foreclosure. Finally, the Board determined that Hull charged both the Knapps and Nack unreasonable fees.

The Board determined that four aggravating factors existed, including: (1) Hull's substantial experience in the practice of law, (2) Hull's prior disciplinary history (3) Hull's pattern of misconduct, and (4) the presence of multiple offenses.

In 1997, Hull received a public reprimand because she failed to properly supervise her legal assistant and for impermissibly paying a commission to that assistant. Additionally, Hull received a private admonition and received a two-year private probation, requiring her to work with a practice monitor. The second sanction arose from three separate matters involving lack of competence associated with filing a Chapter 7 petition, lack of competence for the filing of a contempt motion, and sub-

---

**2.** *See Matter of Figliola*, Del.Supr., 652 A.2d 1071, 1076 (1995).

mission of a document containing false information to the Industrial Accident Board.

The current violations are very similar to the prior violations, displaying a long-term pattern of professional misconduct and incompetence. Moreover, the number of current violations indicates a marked lack of professionalism.

In mitigation, Hull claimed remorse, testifying that she realizes her mistakes and that she should have handled client matters differently. The Board also recognized that Hull's actions were not undertaken with any dishonest or selfish motive. Furthermore, Hull submitted uncontradicted psychiatric testimony that she suffered from bipolar disorder and from obsessive-compulsive disorder. The psychiatrist also testified that Hull faced numerous personal difficulties during the time the violations occurred, including the dissolution of her marriage and embezzlement by a trusted employee. The psychiatrist concluded that Hull's disciplinary violations were caused by her psychiatric condition and that she would be able to control her depression after an extended period of aggressive treatment that would last no less than six months. At the time of the hearing, Hull had just begun treatment.

■ The Board determined that Hull's illness was not a mitigating factor under ABA Standard 9.32(i).[3] Mental disability can be considered as a mitigating factor when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

The Board concluded that Hull proved neither the third nor the fourth element of the Standard.[4] As a result, Hull could not claim that her disability was a mitigating factor; however, under ABA Standard 9.32(c), the Board considered, as a mitigating factor, the psychiatrist's testimony concerning her numerous personal and emotional problems.

After reviewing all of the required factors and weighing both the aggravating and mitigating factors, the Board recommended a one-year suspension for Hull. The Board further recommended that Hull have the option of seeking a termination of the suspension after six months if her treatment were to be effective.

■ This Court concludes that the Board's recommended sanction is inappropriate, and we accept the ODC's recommended two-year sanction. In Delaware, the paramount issue in any attorney discipline matter is the danger to the public that is ascertainable from an attorney's record of professional misconduct.[5] Given Hull's prior history and the number of her current violations, we find the Board's recommended one-year suspension to be inadequate. Hull's current condition and her practices represent an adverse risk to her clients. While this Court is not unsympathetic to Hull's situation, our role in fashioning remedies for attorney misconduct must reflect that our primary responsibility is to the citizens of this State. It is apparent that the Board weighed too heavily the psychiatrist's view of the prospective chance of recovery, weighed too lightly the ongoing public risk and recommended a

---

3. Delaware has not adopted the ABA Standards.

4. Additionally, the Board expressed doubts as to whether Hull had produced enough evidence to satisfy the second requirement. Because the third and fourth elements were not met, the Board did not have to reach any conclusions about the second.

5. See *In re Sullivan*, Del.Supr., 530 A.2d 1115, 1119 (1987).

diminished sanction as a result. A two-year suspension is consistent with Delaware's disciplinary procedure and will provide adequate protection for the public.

Following the full two-year suspension, Hull may apply to the Board for reinstatement. At that time, the burden will be on Hull to demonstrate proof of rehabilitation sufficient to overcome her present limitations to practice.

### Conclusion

(a) Hull shall be prohibited and suspended from engaging in the practice of law for a period of not less than two years beginning March 12, 2001 and ending upon her reinstatement, for which application may be made after March 12, 2003.

(b) During the period of suspension, Hull shall conduct no act directly or indirectly constituting the practice of law, including the sharing or receipt of any legal fees.

(c) Hull shall comply with the provisions of Delaware Lawyers' Rules of Disciplinary Procedure Rules 21 and 23. Hull also shall arrange with another member or members of the Delaware Bar to protect the interests of any of Hull's clients during the period of suspension and submit to this Court on or before March 31, 2001, an affidavit of compliance with this paragraph, co-signed by the attorney who has undertaken the arrangement.

(d) If Hull fails to comply with the requirements set forth in paragraph (c), the ODC shall immediately file a petition with the Court of Chancery for the appointment of a receiver for Hull's law practice.

(e) Hull shall pay the costs of the proceedings before the Board.

(f) This Opinion shall be disseminated by ODC in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.